# DUNKLEY v. BEEKHUIS.

PATENTS; INTERFERENCE; SPECIFICATIONS AND CLAIMS.

Where in an interference involving an improvement in fruit-peeling machines the claims of the issue disclose a device in which jets or sprays of water are employed as a means for performing the peeling operation, and the jets of water as used in the device of either party are not the sole means of peeling, but perform very similar functions in each, both parties are entitled to make the claims of the issue, and the party who first conceived the idea of using the jets and reduced it to practice is entitled to an award of priority of invention.

No. 790. Patent Appeals. Submitted November 18, 1912. Decided January 6, 1913.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case. *Reversed.*

The facts are stated in the opinion.

*Messrs. Chappell & Earl* for the appellant.

*Mr. L. S. Bacon, Mr. Joseph H. Milans, Mr. William F. Booth,* and *Mr. T. Walter Fowler* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Appeal from a decision of the Commissioner of Patents in an interference proceeding.

The invention involved is a device for peeling fruit, in which jets or sprays of water are employed as a means for performing the peeling operation.

The counts of the issue are four in number:

"1. In an apparatus for treating fruit such as peaches, means. for removing previously disintegrated skin from the fruit, including a support for the fruit, means for effecting a change of position of the fruit on said support, and means for directing peeling water jets upon said fruit.

"2. In an apparatus for removing the previously disintegrated skin from fruit, the combination with means for supporting and advancing the fruit, of means for directing a peeling water jet upon said fruit as it advances.

"3. In an apparatus for removing the previously disintegrated skin from fruit, the combination with means for supporting and advancing the fruit, of means for directing peeling jets of water at intervals upon said fruit as it advances.

"4. In an apparatus for removing the previously disintegrated skin from fruit, the combination with means for supporting and advancing the fruit, of means for directing peeling jets of water at intervals upon said fruit from above and below as, it advances."

All the tribunals of the office found that Samuel J. Dunkley was the first to conceive and reduce to practice, provided he was entitled to make the claims of the issue, and this decision was undoubtedly right.

This presents the single issue of the case, and there is direct, conflict in the decisions of the several tribunals passing upon it in succession. A motion to dissolve by Hermanus A. Beekhuis, on the ground that Dunkley was not entitled to make the claims, was referred, in the first instance, to the primary examiner and by him denied. The question was reserved and

presented on the hearing. The Examiner of Interferences differed with the primary examiner, and awarded priority to Beekhuis. On appeal to the Examiners in Chief this decision was reversed, one member dissenting. On appeal to the Commissioner that decision was reversed, and priority awarded to Beekhuis.

The decision turned on the effect of the words "peeling jets of water," which are found in each claim. These words were first used in the claims of Beekhuis, to whom patent issued pending the application of Dunkley, and his claims were copied by the latter for the purpose of procuring the declaration of interference.

The common use of the peeling machine is the removal of the skin from peaches. Before introduction into either machine the fruit passes through a receptacle, where it is subjected to a bath in a hot solution of lye, which disintegrates the skin and makes it readily removable. In Dunkley's device, the fruit from the bath is delivered on to an endless belt conveyor, and passes between rotary brushes for about 6 feet. The brushes are in sections of fiber and sponge. These revolve, apparently, at different rates, and rotate the peach as it is carried along by the conveyor brush. Three perforated pipes are arranged along the passage,—one at each side and one above,—so that the jets or sprays of the nozzle perforations are directed against the line of passing fruit, striking the fruit tangentially and tending to impart a rotary movement to each as it advances in single file to the point of exit.

The Beekhuis machine has a large box screen of wire mesh arranged so as to shake the peaches as they pass over it; the peaches having been submitted to the skin disintegrating bath and cut in halves. Above this shaking screen is arranged a water pipe at a distance of 12 or 15 inches with transverse slits at intervals, which deliver a broad fan-shaped spray or jet of water on to the fruit passing over the screen. Another pipe arranged below the screen delivers a similar spray or jet upon the under side. The fruit is delivered by hand through a feed spout and falls in a mass upon the screen. There it is sub-

jected to the water jets as it passes. The jets assist, and doubt-less, chiefly remove the disintegrated skins. They also cool the fruit after its subjection to the hot lye solution, wash it, and prepare it for canning. The effect of the shaking in the box screen is described as follows:

"This agitation, shaking, or dancing to which the fruit is subjected has the triple effect of, first, advancing the fruit to its discharge from the lower end of the box; second, of occasioning sufficient friction, both between the individual specimens themselves and between them and the screen bottom and sides of the box to assist in removing the skin; and third, of presenting every portion of the fruit, at some time throughout the course of its travel, to the action of the water jets or sprays from the pipes 15 and 19. As the fruit travels through the box under the constant agitation or shaking described, the water jets or sprays from below and above serve to fully remove the particles of skin."

The Commissioner was not satisfied with the evidence of Dunkley relating to the operation of his machine—which peeled peaches rapidly and satisfactorily—that the jets of water had anything more than a washing operation, and was of the opinion that this was all that Dunkley contemplated. It would be practically impossible for any witness to testify to the actual fact that the skins were chiefly removed by the water jets in Dunkley's machine for the reason of the rapid passage of the fruit and its concealment. Without pausing to discuss the criticism by each party of the jet or spray of the other, we think it apparent that the jet of Dunkley would have the effect to remove the skins, as well as to cool and wash the fruit for the canning process. The skin of the peach having been disintegrated by the action of the hot solution of lye, that is to say, cut or broken and loosened from the pulp, was, to say the least, as easily removed by one jet as the other. But let it be conceded that Dunkley was not fully aware of the effective action of the jets of water, and relied chiefly upon the action of the brushes to remove the skins; and, on the other hand, that Beekhuis relied chiefly on the water jet, yet the latter, as we have seen,

relied upon the friction of the peaches with each other and the screen to assist in removing the skins, while the water jets had the additional function of cooling and washing the fruit. It is to be observed that none of the counts define the water jets as constituting the sole peeling means. The counts of the issue are satisfied by a construction in which peeling water jets enter into the operation of removing the skins, whether they be exclusively employed to remove the skins or not. And in neither machine as described and constructed are the water jets shown to be the exclusive means of peeling. Since stress is laid upon the words "peeling jets," it must be noted that no such words occur either in the specifications or the original claims of Beekhuis, whose application was filed May 25, 1904. They first occur in amended claims filed October 21, 1904, and were thereafter embodied in all of the allowed claims. As shown by the described and exhibited structures, both parties first subject the fruit to the hot lye solution to effect the disintegration of the skins. Beekhuis agitates the fruit in his box screen so as to partially peel it. Dunkley passes the fruit between his brushes to assist in peeling. Beekhuis subjects the fruit to the water jets or spray to "fully remove particles of skin," and for the purpose of "assisting in turning the fruit." Dunkley subjects each piece of fruit to jets of water from three pipes, which strike the fruit tangentially with sufficient power to turn it. These, with the brushes, remove the skins, and, being extended beyond the brushes, remove any remaining particles of skin. This is described as a "water-brushing action." In both, the water serves to cool, wash, and rinse the fruit, and make it ready for canning.

We agree with the primary examiner and the majority of the Examiners in Chief that there is a great similarity in each application in so far as showing the functions performed by the water jets in the peeling operation; and that both parties are equally entitled to make the claims in interference.

A sufficient foundation for the claims is in Dunkley's description, to the effect that the peaches (after preparation) are delivered in single file line to a brushing and washing mechan-

ism, which preferably comprises "a group of three long perforated pipes for spraying water upon the moving line of peaches, and subjecting them to *water-brushing action*, an endless belt brush arranged between the two lowermost perforated pipes and operating to brush the peaches as they are rotated and to convey them along, and a pair of opposite rotating cylindrical brushes operating both to rotate and brush the peaches, and having hollow perforated pipe cores for spraying the rotary brushes with water, and rotary cylindrical rubber sponge brushes, also having hollow perforated pipe cores for supplying the same with water; whereby the peaches may be very rapidly and cheaply and perfectly peeled without waste or injury."

Again, he describes the delivery of the line of peaches "between water pipes and brushes of the washing and brushing mechanism, by which the softened and loosened and shriveled skins of the peaches are removed, and the peaches thoroughly washed and freed from all taint or trace of the skin-softening or loosening liquid. This washing or brushing mechanism comprises a group of, preferably, three water pipes G., having a series of perforations, g, arranged to strike the peaches tangentially as they are conveyed along between the pipes." And again, the description says that the perforated water pipes extend beyond the rotary brushes "so that the water spray may entirely free the surface of the peaches from any particle of skin or peel."

Dunkley was the first to invent and put in practice a rapid and effective machine for peeling peaches. This comprised in the combination the jets of water which he evidently realized aided in the removal of the skins when disintegrated by the alkali solution. That he did not realize the full extent of their agency cannot deprive him of the benefits accruing from their use.

His specifications and construction afforded sufficient foundation for the claims; and as he was the first to conceive the idea and reduce it to successful practice, he is entilted to the award

of priority. The decision will therefore be reversed; and this decision will be certified to the Commissioner of Patents.

*Reversed.*

Petition for rehearing denied February 3, 1913.